## BOUND v. SOUTH CAROLINA RY. CO. et al.

### Ex parte ROSEBOROUGH et al.

### (Circuit Court, D. South Carolina. December 12, 1895.)

SALE UNDER RAILROAD MORTGAGE—PURCHASE BY BONDHOLDERS' COMMITTEE.
    Upon a sale under a railroad mortgage, a committee representing a part of the bondholders purchased the property for cash. The commit-

tee had previously advertised its purpose to protect the property, and its invitation to all bondholders to share the expense and result was kept open till the sale. The committee and the mortgage trustees were all parties to the foreclosure suit and took an active part therein. *Held*, that bondholders who did not accept the invitation and were not represented by the committee could not claim a priority in the distribution of the cash consideration paid by the committee merely because the latter immediately resold the property for sufficient to pay the par value of the bonds represented by it, the order for sale having directed a distribution of the fund received on the sale pari passu among all the bondholders.

S. P. Hamilton and B. A. Hagood, for plaintiff.
J. W. Barnwell and Lord & Burke, for defendants.

SIMONTON, Circuit Judge. This case comes up by way of petition in the main cause. It sets up that the petitioners were holders of first consolidated mortgage bonds of the South Carolina Railway Company; the petitioner Roseborough being the holder of bond No. 3,424 for $1,000, on which there were past due and unpaid seven coupons, of $30 each, and the petitioner Browning being the owner of two bonds, of $1,000 each, on which there were due, in all, ——— coupons, of $30 each. The petitioners go on to say that at the sale for foreclosure of the railway property, the respondents Henry W. Smith, Gustave E. Kissell and Peter Geddes were the highest bidders, at $1,000,000, and that after the sale they immediately disposed of the purchased property to Charles Parsons and others for an amount equal to the full value of all the bonds represented by them, and that they remit the petitioners, with all other bondholders not in the syndicate with this committee, to the dividend on the $1,000,000 purchase money which their bonds would receive in a division, including all the bonds due and unpaid when the road was sold, thus including in this the bonds received by this committee; that in this way these petitioners would receive 10 per cent. or 15 per cent. of their bonds, while the bondholders represented by this committee would each receive the same dividend, in spite of the fact that they have already received the full value of their bonds and coupons. The bonds not included in those protected by the committee amount in the aggregate to $63,100. The receiver, in his answer to the petition, says that he had then on hand $68,000, and that some $600,000 of the purchase money is yet unpaid. The petitioners ask that they, and all other bonds in like plight with those they hold, be paid out of the funds in the hands of the receiver, before the other bondholders, who were represented by the committee, are permitted to participate in this fund. The facts of this case, as developed in the record and by the testimony, are these:

When the proceedings by F. W. Bound, a second consolidated mortgage bondholder, were instituted, all the persons representing the several liens on the property were made parties defendant; the bondholders secured by the several mortgages on the property being represented by their trustees. Among other defendants were the trustees of the first consolidated mortgage. In these proceedings the respondents Smith, Kissell, and Geddes intervened as

a committee representing certain first consolidated mortgage bond-holders of the South Carolina Railway Company, expressed dissatisfaction with and distrust of their trustees, and asked that they be made parties defendant in the cause, and be permitted to represent their own interests apart from their trustees. The prayer of this petition was granted, and thenceforward these petitioners became and were parties to the cause, represented by their own counsel, the bondholders instructing them; the trustees of their mortgage being also active parties, with other counsel of their selection, representing the other first consolidated bondholders. The proceedings resulted in an order for a sale. Prior to such sale this committee advertised in several New York papers their purpose to protect the bonds in their charge as much as possible, and inviting all other bondholders to come in and share the expense with them and the result. This invitation was kept open until the day of sale. The present petitioners did not accept the invitation. Neither of them saw it, although it was advertised in the Charleston News and Courier, a paper published in South Carolina. The sale took place, and the committee became the pur-chaser of the whole property, which was sold, free of all liens, for the sum of $1,000,000. This sale was confirmed. After the sale the committee resold the property to the South Carolina & Georgia Railroad Company. A circular issued by them and admitted in evidence shows that they estimated that each of the bonds entitled to share in the proceeds of the resale would receive a share in the resale equal to the par and interest of the bond, less its share of expense. The fairness of the sale of the railroad property under the decree is not questioned, and all effort to set aside the sale to the South Carolina & Georgia Railroad Company has been abandoned on the record.

It is contended that this committee, and the bondholders whom it represents, stand in such a relation to the other bondholders under the same mortgage that they cannot, under that sale, reap all of its advantages for themselves, and counsel rely in great confidence upon the cases of Jackson v. Ludeling, 21 Wall. 616, and State v. Anderson, 91 U. S. 667. These cases clearly establish the principle that one having an interest in a mortgage, in which there are others having an equal or a similar interest, cannot make such use of his interest therein so as to defeat, annul, or exclude the interest of the others sharing the security with him; that is to say, cannot by reason of his interest in the mortgage, conduct by himself his separate proceeding, and under it dispose of the mortgaged property so as to deprive other persons having a lien of the same rank with his, or interested in the same mortgage with him, of their claim on the property. This is the precise point decided in Jackson v. Ludeling, and the qualification of the rule:

"When two or more persons have a common interest in a security, equity will not allow one to appropriate it exclusively to himself, or to impair its worth to the others. Community of interest involves mutual obligation. If, e. g., a corporation issue many bonds, and give a mortgage on all its estates

to secure them, one holder of the bonds, admitting that he has a right to make use of the mortgage to enforce the payment of the bonds which he holds, has no right to employ it as an instrument by which he may become the owner of the property mortgaged at the lowest price at which it can be obtained, leaving the bonds held by his associate holders unpaid. His duty, if he uses it at all, is to make it productive of the most that can be obtained for all who are interested in it, and if he seek to make a profit out of it at the expense of those whose rights in it were the same as his own, he is guilty of fraud."

The doctrine is a familiar one. If a holder of one of several bonds secured by a mortgage of real estate proceed at law on his bond, enter up judgment against the mortgagor, enforce it by execution, and at the sale purchase the equity of redemption, he cannot in this way deprive the other bondholders secured by the same mortgage of their protection under it. In the proceedings leading up to the sale in the present case, the committee and the bonds represented by them dissociated themselves from the other bondholders under their common mortgage, and thenceforward acted apart from them in the protection of their interests. These other bondholders, including the petitioners, were throughout represented by the trustees of their mortgage. There was, then, no duty or obligation on the part of the committee towards the bondholders not represented by them in any of the steps leading up to this sale. They were representing as distinct an interest from them as if they were protected by another security. Nor was there any obligation upon them to consult or protect the other bondholders, who were actively and fully represented in the same cause by their own trustees and counsel. They were not seeking to make use of a common security for their own separate advantage, nor were they making use of proceedings unknown to or apart from those who shared with them the security, nor were they bound to admit other bondholders to come in with them. They did not profess to act for themselves and for all others in like plight with them. The order for sale having been made, and the day of the sale having arrived, the committee were represented at the sale and bid. The fairness of the sale is not questioned. Its validity cannot be disputed. When the property was knocked down to them, they did not use any of the bonds secured by the mortgage in payment, in whole or in part, of so much of the purchase money they were required to pay. This was paid in cash. The sale was confirmed. The special master had reported that the amount bid was $1,000,000. The deed was executed to the committee as purchasers, and the property conveyed free of all liens. Thenceforward the property of the railway company was free from the mortgage, and from any claim of the bondholders, and the money in the hands of the special master was substituted for it, and took its place in all respects. This court had no control over the disposition made or desired to be made of the property by the purchasers,—could give no direction whatever with regard to it. Just so soon as the deed of the special master was executed, it passed from the jurisdiction of the court. This is the inevitable result of the sale, and it cannot be

avoided, unless it can be shown that the bids were chilled, or the sale made invalid in some way.    It is said that the purchasers at this sale resold it at a price which saved them from any loss whatever on their bonds.    This, no doubt, is so.    But it would be as impossible for this court to compel them to share their profits with the bondholders not represented by the committee, as it would have been to compel these same bondholders to come to their assistance if they had resold at a loss and not at a profit.

But the learned counsel for the petitioners contend that, inasmuch as by the resale the bondholders represented by the committee have been fully secured from loss, having already received a sum in full of their bonds, they cannot, in equity and good conscience, claim dividends on the purchase money to the detriment of other bondholders of their class, who thus far have received nothing.    This court can only take cognizance of the mortgaged premises and of the $1,000,000 which were substituted therefor. Its power of direction extends only to the disposition of the $1,000,-000, and that has been exhausted by the decree and order for the sale, and the provisions therein.    At this date it cannot modify, annul, or repeal any part of that order and decree.    By paragraph 5 of that decree it is found that there were then outstanding and unpaid bonds secured by the first consolidated mortgage to the aggregate of (principal) $4,883,000, and that the holders of said bonds are entitled to the payment of the principal on said bonds, as well as the payment of the interest due on such principal; that is to say, each holder of each bond, every holder of every bond. Paragraph 15 orders the fund to arise from the sale to be applied—First, to the costs; second, to the amount due on the bonds of the Louisville, Cincinnati & Charleston Railroad Company; third, to the amount due on bonds under the mortgage of 1868; then, any balance remaining after providing for the above in full shall be applied to the payment of the principal and the past-due coupons of the first consolidated mortgage bonds as may remain due and unpaid at the date of distribution.    This gives to each first consolidated mortgage bondholder at the date of the decree a vested interest in the proceeds of sale.    Of this he cannot now be deprived.    It creates a mode of distribution pari passu among all the first consolidated mortgage bonds, each and every of them.    This mode of distribution fixed by this decree cannot at this date be disturbed by the occurrence of facts outside of the case, and not requiring the order of the court to give them validity,—the result of the distribution of its proceeds.    In the absence of any charge of fraud or illegality in the proceedings leading up to the sale, to the conduct of the sale itself, and to the purchase made thereunder, there is not equity in the petition, and it must be dismissed.